T.C. Memo. 1999-258

UNITED STATES TAX COURT

WALTER A. BARNISKIS AND MARY SUE BARNISKIS, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18029-97.                    Filed August 4, 1999.

Scott M. Nelson and Robert B. Patterson, for petitioners.

Blaine C. Holiday, for respondent.

MEMORANDUM OPINION

DINAN, Special Trial Judge:   This case was heard pursuant
to the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

---

    [1]    Unless otherwise indicated, all section references are
to the Internal Revenue Code in effect for the taxable years in
                                                (continued...)

Respondent determined deficiencies in petitioners' Federal income taxes for 1991, 1992, and 1993 in the amounts of $2,675, $2,842, and $2,366, respectively.

The issue for decision is whether petitioners' claimed Schedule C losses for 1991, 1992, and 1993 constitute passive activity losses under section 469.  The resolution of this issue turns on whether petitioners materially participated in the activity of renting their condominium unit during the taxable years in issue.

Some of the facts have been stipulated and are so found. The stipulations of fact and attached exhibits are incorporated herein by this reference.  Petitioners resided in New Hope, Minnesota, on the date the petition was filed in this case.

Petitioner husband works as an engineering manager for Honeywell Corporation at its sensor guidance products division in Minneapolis, Minnesota.  His formal education consists of a bachelor's degree in electrical engineering from the University of Notre Dame and some graduate courses in the electrical engineering program at the University of Minnesota.  Petitioner wife works as a librarian.

In October 1987, petitioners purchased condominium unit number 40 (the unit) at Bluefin Bay, a condominium complex

---

[1](...continued)
issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

located in Tofte, Minnesota.  Tofte is located on the shore of Lake Superior in Superior National Forest, approximately 250 miles northeast of petitioners' residence in New Hope.

Bluefin Bay consists of six buildings, each having a different layout.  The six buildings contain a total of 54 condominium units.  Petitioners' unit is located in a building which has three floors and consists of 20 condominium units, including 10 one-story units on the first floor and 10 two-story units on the second and third floors.  Petitioners' unit is a two-story unit.  Since there are exterior doors on both floors, the unit may be rented in its entirety or by individual floor by simply unlocking or locking an interior, adjoining door.

Petitioners were members of the Bluefin Bay Condominium Association (BBCA), the common interest owner of Bluefin Bay. BBCA owns all of Bluefin Bay's common property, including an indoor swimming pool, tennis courts, a conference room, a parking area, water and waste treatment facilities, and communication and cable equipment.  BBCA arranged for the Tofte Management Company (TMC) to manage and operate the Bluefin Bay complex.  Prior to 1991, BBCA had member committees who would collectively decide the nature and extent of the services to be performed by TMC. Other member committees were responsible for establishing minimum standards for the individual units.  In response to increasing difficulties in making decisions through the committee process,

BBCA and TMC decided to simplify the relationships between the unit owners and TMC by negotiating for individual written management contracts between each unit owner and TMC. The contracts were modeled after the policies that BBCA's committees had developed in preceding years. With the exception of a few unit owners who lived at Bluefin Bay all year, most of the unit owners entered into management contracts with TMC.

Petitioners' management contract with TMC was effective January 1, 1991, through the taxable years in issue. Under the management contract, TMC was appointed as the exclusive rental agent for petitioners' unit. Petitioners were required to specifically reserve their unit in writing for the days which they intended to personally use it. In the event petitioners failed to properly notify TMC of their intended use, rental arrangements previously made by TMC with other guests would hold priority over petitioners' personal use, unless the guests could be assigned to another, comparable unit.

The management contract provided for TMC to receive 45 percent of the gross rental proceeds from petitioners' unit in exchange for its services. Under the management contract, TMC's duties included, but were not limited to, managing reservations, checking in and out guests, providing housekeeping services, collecting rents, generating financial reports, conducting damage

inspections, and making any necessary maintenance calls and repairs.

TMC owns and operates a restaurant located adjacent to the condominium complex. During the taxable years in issue, TMC's employees staffed a reception desk near the restaurant entrance for guests staying at Bluefin Bay. TMC also employed managers, activity directors, bookkeepers, a housekeeping staff, and a maintenance staff, all of whom participated in the activity of renting petitioners' unit.

TMC's employees developed, drafted, and printed marketing and promotional materials for Bluefin Bay. TMC maintained a toll-free telephone number for promotional and reservation purposes. TMC's employees answered this telephone line, booked reservations for owners and guests, and mailed promotional and marketing materials to interested parties.

TMC's employees checked in guests, received deposits, and issued keys. They responded to maintenance calls and made any necessary repairs. TMC's employees opened, closed, and cleaned the pool, hot tub, and pool house on a daily basis. They also maintained Bluefin Bay's tennis courts and exercise room. In the winters, TMC's employees plowed the parking lots and shoveled, salted, and sanded the walkways.

TMC's employees collected payments from guests and checked them out of the unit. They cleaned and inspected the unit after

guests departed.  The cleaning activity included cleaning the interior of the unit and laundering the linens and towels.

TMC's employees maintained daily books and records reflecting the collected rents and fees owed by petitioners. They issued monthly and annual reports to petitioners reflecting the rental activity, owner charges, and TMC's share of the gross rentals.

Petitioners' duties under the management contract included providing TMC with a schedule of their intended personal use, maintaining adequate insurance on their unit, and complying with certain "Interior Quality Standards".

TMC made detailed inspections of petitioners' unit at least annually and compiled lists of mandatory repairs and items which needed to be replaced in order to satisfy the Interior Quality Standards.  Petitioners were given the choice to personally make these repairs and improvements or to authorize TMC to make them. If they failed to comply by certain dates, TMC would arrange for the work to be performed by its employees or subcontractors and charge petitioners accordingly.

Petitioners traveled to Bluefin Bay 5 or 6 times during each of the taxable years.  In most cases, petitioners would stay at Bluefin Bay in their unit for a long weekend.  They also spent 1 full week each summer in their unit.  Petitioners' trips to Bluefin Bay usually combined family vacations with owner

activities such as attending board meetings and/or making some repairs to their unit. Petitioner husband also attended several BBCA meetings in St. Paul, Minnesota, during the taxable years in issue. Petitioners sold their unit on or about October 31, 1997.

On Schedules C attached to their 1991, 1992, and 1993 returns, petitioners reported the following amounts with respect to the rental of their unit:

|  | 1991 | 1992 | 1993 |
| --- | --- | --- | --- |
| Gross Income | $36,554 | $40,202 | $38,029 |
| Total Expenses | (46,096) | (50,360) | (46,454) |
| Net Loss | (9,542) | (10,158) | (8,425) |

Petitioners claimed business loss deductions on their 1991, 1992, and 1993 returns in amounts equal to the amounts of their net losses reported on the Schedules C. In the statutory notice of deficiency, respondent disallowed the claimed business loss deductions on the ground that the losses were sustained in connection with an activity in which petitioners did not materially participate.

Section 469 generally disallows for the taxable year any passive activity loss that exceeds passive activity income. See sec. 469(a), (d)(1). A passive activity is any activity which involves the conduct of any trade or business in which the taxpayer does not materially participate.[2] See sec. 469(c)(1).

---

[2] The term "passive activity" also includes any "rental activity", regardless of whether the taxpayer materially
(continued...)

In general, section 469(h)(1) provides that a taxpayer shall be treated as materially participating in an activity only if the taxpayer is involved in the operations of the activity on a basis which is regular, continuous, and substantial.  Section 469(l) authorizes the Secretary to prescribe regulations as may be necessary or appropriate to carry out the provisions of section 469, including regulations which specify what constitutes material participation.  See sec. 469(l)(1).

Section 1.469-5T(a), Temporary Income Tax Regs., 53 Fed. Reg. 5725-5726 (Feb. 25, 1988), provides that an individual will be treated as materially participating in an activity for the taxable year if:

    (1)  The individual participates in the activity for more than 500 hours during such year;

    (2)  The individual's participation in the activity for the taxable year constitutes substantially all of the participation in such activity of all individuals (including individuals who are not owners of interests in the activity) for such year;

    (3)  The individual participates in the activity for more than 100 hours during the taxable year, and such individual's participation in the activity for the taxable year is not less than the participation in the

---

[2](...continued)
participates in the activity.  Sec. 469(c)(2), (4).  A rental activity is any activity where payments are principally for the use of tangible property.  See sec. 469(j)(8).  However, petitioners' activity does not constitute a rental activity within the meaning of sec. 469(j)(8) because the average customer stay at their unit was less than 7 days.  See sec. 1.469-1T(e)(3)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5702 (Feb. 25, 1988).

activity of any other individual (including individuals who are not owners of interests in the activity) for such year;

(4)  The activity is a significant participation activity * * * for the taxable year, and the individual's aggregate participation in all significant participation activities during such year exceeds 500 hours;

(5)  The individual materially participated in the activity * * * for any five taxable years (whether or not consecutive) during the ten taxable years that immediately precede the taxable year;

(6)  The activity is a personal service activity * * * and the individual materially participated in the activity for any three taxable years (whether or not consecutive) preceding the taxable year; or

(7)  Based on all of the facts and circumstances * * * the individual participates in the activity on a regular, continuous, and substantial basis during such year.

Petitioners argue that they satisfy the requirements of section 1.469-5T(a)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5726 (Feb. 25, 1988).  Respondent argues that petitioners have not satisfied this material participation test.

Petitioners' Participation

We must first decide whether petitioners participated in the rental of their unit for more than 100 hours during each of the taxable years in issue.  Section 1.469-5(f)(1), Income Tax Regs., generally provides that any work done by an individual in connection with an activity in which the individual owns an interest at the time the work is done shall be treated as participation of the individual in the activity.  We consider

petitioners' combined hours of participation in deciding whether this material participation test is satisfied. See sec. 469(h)(5); sec. 1.469-5T(f)(3), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988).

With respect to the evidence which may be used to establish hours of participation, section 1.469-5T(f)(4), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides:

> The extent of an individual's participation in an activity may be established by any reasonable means. Contemporaneous daily time reports, logs, or similar documents are not required if the extent of such participation may be established by other reasonable means. Reasonable means for purposes of this paragraph may include but are not limited to the identification of services performed over a period of time and the approximate number of hours spent performing such services during such period, based on appointment books, calendars, or narrative summaries.

In their brief, petitioners characterized their personal time records as detailed records of their participation. We have carefully reviewed these personal time records and find that the exhibit which purports to summarize petitioners' total hours of participation is not accurate. The summary exhibit lists petitioners' total hours of participation as 174 hours for 1991, 239 hours for 1992, and 154.5 hours for 1993. We compute the total hours of participation as listed in the underlying records to be 149.50 hours for 1991, 146.25 hours for 1992, and 108.25 hours for 1993.

Furthermore, section 1.469-5T(f)(2)(ii)(A), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides that work performed by an individual in the individual's capacity as an investor in an activity shall not be treated as participation of the individual in the activity unless the individual is involved in the day-to-day management or operations of the activity.  We find that petitioners were not involved in the day-to-day management or operations of their unit because TMC managed and operated the entire Bluefin Bay complex on a daily basis.

Section 1.469-5T(f)(2)(ii)(B), Temporary Income Tax Regs., 53 Fed. Reg. 5727 (Feb. 25, 1988), provides that investor activities include:

(1) Studying and reviewing financial statements or reports on operations of the activity;

(2) Preparing or compiling summaries or analyses of the finances or operations of the activity for the individual's own use; and

(3) Monitoring the finances or operations of the activity in a non-managerial capacity.

We find that several of the activities described in petitioners' personal time records constitute investor activities.  In particular, petitioners' activities of organizing their personal records, preparing their taxes, paying bills, and reviewing their monthly statements of the rentals of their unit

all constitute investor activities.[3]   Petitioners have failed to establish that they materially participated in the rental activity.  Even if we were to assume that petitioners expended 100 hours in their rental activity during the years in issue, they have not proved that their participation was greater than the management company's participation.

Other Individuals' Participation

The second requirement of the section 1.469-5T(a)(3), Temporary Income Tax Regs., supra, material participation test is that petitioners' participation in the activity of renting their unit must not have been less than the participation in such activity of any other individuals.  Petitioners must establish that no other individuals participated in the activity of renting their unit for more time than they did during the years in issue.

Dennis Rysdahl, the founder, president, secretary, and general manager of TMC, was involved in the construction of Bluefin Bay in 1984 and, more recently, an adjacent development called Tofte Cove.  Mr. Rysdahl currently oversees the management and operation of Bluefin Bay and did so during the taxable years in issue.

In a letter dated June 30, 1997, to the Bluefin Bay and Tofte Cove owners, Mr. Rysdahl solicited contributions to a fund

---

[3]   We find that the listed hours of participation include 38.5 hours, 25.25 hours, and 27.25 hours of investor activities for 1991, 1992, and 1993, respectively.

which some of the owners had created to challenge respondent's position in cases such as this one. Mr. Rysdahl stated in the letter that he was personally contributing on behalf of the unit that he owned and explained his motivation as follows:

> [I] do so mainly based on the concern that, since tax benefits are useful to at least some of our owners, a victory in this case would make ownership of a unit more desirable for some prospective buyers, and therefore help retain the re-sale value of our units.

Immediately prior to the submission of this June 30, 1997, letter as evidence, Mr. Rysdahl had testified as follows:

Q: Mr. Rysdahl, you, in fact, own a unit at Bluefin Bay, don't you?

A: I am a 50 percent owner in one unit at Bluefin Bay. Actually I'm a 50 percent owner in a unit at Tofte Cove Townhomes, which is a more recent and adjacent development. I no longer own any part of a unit at Bluefin Bay.

Q: But it -- and it's your opinion or belief that the outcome of this case will affect the resale value of your unit?

A: No. It won't affect the resale value of my unit.

Mr. Rysdahl later testified about the type and extent of TMC's employees' participation in the management and operation of Bluefin Bay. In light of his personal and business interests in the outcome of this case, we discredit Mr. Rysdahl's testimony concerning the number of hours spent by TMC's employees in the activity of renting petitioners' unit. We rely on his testimony only to the extent it is corroborated by other reliable evidence.

The monthly statements generated by TMC during 1991 and 1992 reveal that both or one of the floors of petitioners' unit were used by 238 different guests during 1991 and by 227 different guests during 1992. TMC's maintenance records for petitioners' unit show that petitioners were separately charged for 18 hours of labor during 1991 and 41 hours of labor during 1992. These charges were in addition to the 45-percent gross rental fee paid by petitioners under the management contract. The maintenance records do not reflect the maintenance staff's work on the facilities and grounds outside of petitioners' unit.

Based on the record, we find that petitioners have failed to prove that they participated in the activity of renting their unit more than TMC's employees during the years in issue. The record contains only Mr. Rysdahl's biased testimony about the number of hours TMC's employees devoted to petitioners' unit, which we do not rely upon without corroboration.[4] It is clear, however, that the front desk staff checked in and out over 200 of petitioners' guests each year. In addition, the housekeeping staff inspected and cleaned petitioners' unit after each of their guests checked out. The frequency with which these services were required convinces us that TMC's employees devoted a substantial amount of time to petitioners' unit. We are unable to conclude

---

[4]    Although available to Mr. Rysdahl, TMC's business records of its employees' work hours and assignments were not made part of the record in this case.

from this record that petitioners' participation during the years in issue was greater than the participation of TMC's employees.

We conclude that petitioners did not materially participate in the activity of renting their unit during 1991, 1992, and 1993.  Accordingly, we hold that petitioners' claimed losses from such activity constitute passive activity losses which are not deductible in the taxable years in issue by reason of section 469.  Cf. <u>Oberle v. Commissioner</u>, T.C. Memo. 1998-156; <u>Chapin v. Commissioner</u>, T.C. Memo. 1996-56.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.